# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ) | |
| In Re Subpoena issued to ) | |
| Birch Communications, Inc. f/k/a ) | |
| CBeyond ) | Case No. 1:14-cv-3904-WSD- |
| Communications, LLC. ) | JFK |

## CBEYOND COMMUNICATIONS, LLC'S ("CBEYOND") REPLY IN SUPPORT OF ITS MOTION TO QUASH AND FOR SANCTIONS

## INTRODUCTION

To support its subpoena seeking personal identifying information of more than a thousand of CBeyond's subscribers, Rightscorp rehashes the same arguments that courts have rejected for the past decade. For more than ten years courts have uniformly held that an Internet Service Provider ("ISP") acting as a mere conduit is not subject to subpoenas issued under Section 512(h) of the Digital Millennium Copyright Act ("DMCA"). In the face of these rulings consistently quashing subpoenas like the one at issue here, Congress <u>has not</u> modified Section 512(h). This Court should avoid becoming the only court holding that invasive subpoenas of this type apply to mere pass-through ISPs. Instead, this Court should quash Rightscorp's subpoena because the text, structure, public policy, and cases analyzing Section 512(h) show that it does not apply to conduit ISPs, and because Section 512(h) is unconstitutional if read as Rightscorp advocates. Moreover, Rightscorp should be ordered to reimburse CBeyond for its costs.

## ARGUMENT

**I.    THE TEXT AND STRUCTURE OF SECTION 512(h) SHOW THAT RIGHTSCORP'S SUBPOENA SHOULD BE QUASHED.**

Rightscorp is patently incorrect when it argues that "Section 512(h) authorizes subpoenas to service providers, regardless of type." Doc. 11, at 8.  In fact, the type of service provider is critical in determining whether a subpoena under this statute is valid.  It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).  A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995).

Under Section 512, ISPs that store files are treated differently from ISPs that act as mere conduits.  As noted by a North Carolina federal court, "Subsection (a) addresses transitory digital network communications or service providers who simply allow information to pass through their systems from one user [to another]." *In re Subpoena to UNC-Chapel Hill*, 367 F. Supp. 2d 945, 948-49 (M.D.N.C. 2005) (citing 17 U.S.C. § 512).  The other subsections are directed to ISPs that "temporarily store data from one user before passing it on to another at the request of the user" (Section 512(b)), "allow users to store data on the provider's system or network for longer periods of time" (Section 512(c)), or

"maintain data on their network or system for use with an information location tool." (Section 512(d)).   367 F. Supp. 2d at 948-49.   This statutory framework reveals that Congress had in mind different requirements for two types of ISPs.   On the one hand, there are pass-through or conduit ISPs—those covered by subsection (a)—that do not store the allegedly infringing material at issue.   <u>CBeyond belongs to this category because it does not store the material that Rightscorp alleges was infringed</u>.   On the other hand, the ISPs covered by subsections (b), (c), and (d) are those that store allegedly infringing material.   The distinction between these two categories is even more apparent from the fact that the notification required by subsection (c)(3) (the "Notification Statute") is referenced by subsections (b), (c), and (d), which cover ISPs storing material, <u>but not</u> by subsection (a), which covers ISPs that do not.[1]

The fact that Congress specifically placed subsection (a) outside the purview of the Notification Statute is critical.   Because issuance of a subpoena under Section 512(h) requires proof of the issuance of the notice required under the

---

[1] The notification under subsection (c)(3) must contain information sufficient to locate and identify "the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material." 17 U.S.C. § 512(c)(3).   Subsection (c)(3) is referenced in subsection (b)(2)(E), it is an integral part of subsection (c), and is also referenced in subsection (d)(3).   In subsections (b) through (d), the notification required by subsection (c)(3) is meant to allow an ISP to locate and remove the allegedly infringing material from its network.

WA 6495453.1

Notification Statute, such subpoenas cannot be properly issued to conduit ISPs, as these ISPs are not covered under the Notification Statute:

> [Subsection (h)] does not authorize the issuance of subpoenas against Subsection (a) ISPs . . . because before a subpoena may issue, the clerk must first receive a copy of the notice described in Subsection (c)(3)(A). This notice applies only to the categories of ISPs in Subsections (b)-(d). Upon receipt of the notice, Subsection (b)-(d) ISPs must respond "expeditiously to remove, or disable access to, the material that is claimed to be infringing," [per] 17 U.S.C. §§ 512(b)(2)(E), 512(c)(1)(C), & 512(d)(3), <u>to satisfy their safe harbor requirements</u>. The notice and takedown provisions outlined above are noticeably absent from Section 512(a).  In sum "<u>512(h) is structurally linked to the storage functions of an ISP and not to its transmission functions, such as those listed in § 512(a)</u>."

*Interscope Records v. Does 1-7*, 494 F. Supp. 2d 388, 391 (E.D. Va. 2007) (emphasis added).   Subjecting conduit ISPs to 512(h) subpoenas "would necessarily amount to the rewriting of the statute," because it would force the grafting of the Notification Statute onto subsection (a), where it was excluded by Congress.  *In re Subpoena to UNC-Chapel Hill*, 367 F. Supp. 2d at 953.  This Court must reject Rightscorp's invitation to rewrite the statute, given that a court construing an enactment may not insert "additional, material terms," eliminate "incongruity," or alter "imprecise enactments."  *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002).

Finally, Rightscorp argues that the interpretation advanced by CBeyond should be rejected because it is not possible for a rights holder to know, at the time

WA 6495453.1

it issues a subpoena, whether the ISP is a conduit ISP. Doc. 11, at 13.  Of course, Rightscorp could simply have asked before issuing the subpoena.  Furthermore, the argument does not even apply in this case, since Rightscorp does not dispute that CBeyond is merely a conduit ISP as to the allegations in the subpoena.  Rightscorp also conveniently forgets that the vast majority of ISPs do not store songs or movies that are shared by its subscribers.  Even unsophisticated Internet users know that downloading a file involves a transmission between one's computer and a third party, usually another user or a web-site, and that no files are stored by one's ISP.  Rightscorp's argument has no merit.

## II.    RIGHTSCORP'S INTERPRETATION WOULD ALTER THE BALANCE OF INTERESTS PROTECTED UNDER THE DMCA.

Rightscorp argues that CBeyond's interpretation of Section 512(h) undermines the act's purpose. Doc. 11, at 14.  To the contrary, allowing copyright owners to have unrestricted access to the personal identifying information of Internet users would cast aside the balance of interests carefully crafted by Congress.  The DMCA was intended to strike a balance between protecting the intellectual property rights of parties and protecting the free use of the Internet. *See In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 777 (8th Cir. 2005).  No one denies that there is a need to protect intellectual property rights in creative works with mechanisms by which to address perceived violations

WA 6495453.1

of these rights.  Equally important, however, is the public policy goal of promoting the use of the Internet to permit a free exchange of ideas.  Overreaching tactics that would expose the identities of Internet users could have a severe chilling effect on the free exchange of ideas.  In reaching an appropriate balance, Congress constructed Section 512(h) such that the subpoena power extends only to activities over which ISPs have a degree of control.

When considering the likely circumstances involving each of the activities of an ISP discussed in Section 512(a)-(d) for any instance of alleged infringement, it is logical to exclude conduit ISPs from subpoenas under Section 512(h).  The expectation of privacy between a subscriber and an ISP who "hosts" or otherwise places allegedly infringing material of the subscriber on its servers (for ISPs described under Section 512(b)-(d)) is lessened in contrast to a subscriber who is only using the ISP for access to the Internet, such as those under subsection (a).  Further, an ISP described under Section 512(b)-(d) (that is, one that hosts the material) would presumably have ready access to the allegedly infringing material since the material would reside on its own servers.  A conduit ISP described under Section 512(a), on the other hand, would not have access to the transitory communications of its subscribers by which to access the allegedly infringing material.  This stark difference in the relationship between the subscriber and ISP in the two scenarios supports the conclusion that Congress acted deliberately to

WA 6495453.1

limit the use of Section 512(h) subpoena authority to situations where the ISP has stored allegedly infringing material on its servers.  After all, the reference to the subsection (c)(3) notification resonates more clearly when a 512(h) subpoena addresses infringing material residing on an ISP's server.

Granting Rightscorp's subpoena and revealing the identities of CBeyond's subscribers would seriously subvert user privacy, something Congress could not have intended.  Congress could not have intended ISPs to disclose highly sensitive confidential information of users that store none of the allegedly infringing material on the ISP's servers.  Otherwise, conduit ISPs would be forced to disclose user information continuously.  If Rightscorp's subpoena is not quashed, there would be nothing preventing Rightscorp from issuing another subpoena in a few weeks that would require CBeyond to disclose identifying information of another thousand users.  Congress could not have intended this result.  As the courts addressing the issue have uniformly held, the most reasonable interpretation of Section 512(h) is that Congress intended for this information to be disclosed only in the case when an ISP has the allegedly infringing material on its servers, as identified by the notice prescribed under Section 512(c)(3).  Here, that was not the case.  Thus, Rightscorp's subpoena should be quashed.

WA 6495453.1

### III.   CONGRESS HAS NOT MODIFIED SECTION 512 TO INCLUDE PASS-THROUGH ISPs AS BEING SUBJECT TO A SUBPOENA.

Furthermore, in view of numerous decisions holding that Section 512(h) subpoenas cannot be properly used against a subsection (a) conduit ISP such as CBeyond, Congress' legislative silence effectively confirms those decisions.   In 2003 the District of Columbia Circuit Court of Appeals held that Section 512(h) subpoenas cannot be served on ISPs whose activity relating to the allegedly infringing material was merely as a pass-through conduit.   *See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233-36 (D.C. Cir. 2003).   In 2005 the Eighth Circuit followed *Verizon's* reasoning and holding. *See In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 777 (8th Cir. 2005).   Since then the courts analyzing this issue have uniformly followed *Verizon* and *Charter*.[2]   Rightscorp, in fact, fails to identify a single case, apart from two rulings that were subsequently reversed, which refused to quash a subpoena to a conduit ISP.   There are none.

Yet, Congress has not modified Section 512.   Rightscorp fails to acknowledge that Congress had a full opportunity to amend the DMCA but did not, even despite intense lobbying.   The "Inducing Infringement of Copyrights

---

[2] *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash*, No. 4:12-CV-00963, 2012 WL 4387420, at *3 (S.D. Tex. Sept. 25, 2012); *Maximized Living, Inc. v. Google, Inc.*, No. C11-80061 MISC CRB, 2011 WL 6749017, at *6 (N.D. Cal. Dec. 22, 2011); *In re Subpoena to UNC-Chapel Hill*, 367 F. Supp. 2d at 952; *Interscope Records*, 494 F. Supp. 2d at 391.

WA 6495453.1

Act" was introduced in Congress in 2004, shortly after *Verizon*.[3]  That Act would have changed the safe harbors of Section 512 to make ISPs and other technology companies liable for "inducing" subscribers to commit copyright infringement when sharing files.  The "Discouraging Online Networked Trafficking Inducement Act of 2004" was also introduced.[4]  Yet, no legislation was passed affecting the issuance of subpoenas under Section 512(h).

This is quite telling.  Congress and interested parties have had more than ten years to <u>specifically</u> modify Section 512(h) so as to overrule the *Verizon* line of cases, but no modification of Section 512(h) has been passed.   "Congress is presumed to know the content of existing, relevant law, and where Congress knows how to say something but chooses not to, <u>its silence is controlling</u>." *Lindley v. FDIC*, 733 F.3d 1043, 1055-56 (11th Cir. 2013) (emphasis added).   The statutory revision that Rightscorp now asks this Court to supply should be rejected, because it was rejected by Congress.

---

[3] Katie Dean, *Copyright Bill to Kill Tech?* WIRE MAGAZINE, (Dec. 22, 2014), http://archive.wired.com/politics/law/news/2004/07/64297.
[4] Eighth Circuit Rejects RIAA's Use Of DMCA Subpoenas To Identify P2P File Sharers, DAVIS WRIGHT TREMAINE, LLP (Dec. 16, 2014), http://www.dwt.com/advisories/Eighth_Circuit_Rejects_RIAAs_Use_Of_DMCA_Subpoenas_To_Identify_P2P_File_Sharers_01_05_2005/; *see also* Elwood J. Downing, *EDUCAUSE Washington Update, September 29, 2004*, MERIT NETWORK, (Dec. 22, 2014), http://www.merit.edu/mail.archives/mjts/2004-09/msg00005.html.

WA 6495453.1

**IV.   THE CONSTRUCTION THAT RIGHTSCORP ASKS THE COURT TO APPLY TO SECTION 512(h) IS UNCONSTITUTIONAL BECAUSE ISSUING A SUBPOENA UNDER SECTION 512(h) WOULD NOT BE A MINISTERIAL ACT.**

Rightscorp concedes that Section 512(h) is constitutional only if issuing a subpoena under this section amounts to a ministerial act.  Doc. 11, at 17.  This is because Article III requires a live controversy if the act of issuing a subpoena under Section 512(h) is more than ministerial.  *See U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988).  However, contrary to Rightscorp's assertions, Doc. 11, at 15-19, the very complexity of Section 512(h) shows that issuing a subpoena under this statute is more than ministerial, because doing so requires great analysis and discretion.   As Rightscorp concedes, "[a] ministerial duty 'is one in respect to which nothing is left to discretion.  It is a simple, definite duty, arising under conditions . . . proved to exist, and imposed by the law.'"  Doc. 11, at 17 (citing *Miss. v. Johnson*, 71 U.S. 475, 498 (1866)).

Section 512(h) requires clerks to exercise significant judgment.  To issue a subpoena under 512(h) a clerk is required first to analyze the statute, and then to determine what requirements must be met for the subpoena to be issued.  The clerk must then ensure that the party seeking the subpoena attached the notification required by subsection (c)(3), as required by subsection (h)(2)(a).  Then, the clerk must determine whether this notification "substantially" complies with the <u>six</u>

WA 6495453.1

subparts of (c)(3).  If these requirements have been met, the clerk must further ensure that the subpoena complies with subsection (h)(2)(b), and that the declaration complies with (h)(2)(c).  This complex analysis is certainly not "a simple, definite duty" with respect to which "nothing is left to discretion."  But the clerk must do more.

Once the clerk has determined that a subpoena complies with the many requirements of subsections (h) and (c)(3), the clerk must then determine, in the instance of a conduit ISP, whether issuing a subpoena would be proper as a matter of law.  If the subpoena is to be complied with in the District of Columbia, or in the Eighth Circuit, then the subpoena should not be issued as it will be quashed under binding precedent.  What if the subpoena is to be responded to elsewhere?

The very complexity of Section 512(h) distinguishes this statute from the other statutes cited by Rightscorp that provide for a pre-filing subpoena. Doc. 11, at 18.  None of these statutes requires a clerk to complete as many discrete analytical steps as Section 512(h).  "[I]t inescapably follows that the clerk must perform more than a ministerial act were he or she to issue a subpoena against a Section 512(a) provider."  *In re Subpoena to UNC-Chapel Hill,* 367 F. Supp. 2d at 955.  Given that the clerk must perform more than a ministerial task, a case or controversy is required for Section 512(h) to be constitutional.  Doc. 11, at 11. Here, there is none, and thus Rightscorp's subpoena must be quashed.

WA 6495453.1

## V.    RIGHTSCORP'S SUBPOENA SHOULD BE QUASHED BECAUSE RESPONDING TO IT WOULD BE UNDULY BURDENSOME.

For at least two reasons, Rightscorp's subpoena should be quashed because responding to it would be unduly burdensome to CBeyond.   First, providing personal identifying information of more than a thousand subscribers would be an unduly expensive and labor-intensive task.   Second, disclosing this information could expose CBeyond to liability and extensive litigation costs.

### A.    Responding to the subpoena would be unduly burdensome.

Rightscorp argues that CBeyond has not demonstrated undue burden because the evidence presented by CBeyond is "wholly insufficient."   Doc. 11, at 21-22.   CBeyond therefore has attempted to quantify the labor and expense that would be required to obtain the information sought by Rightscorp.

The records maintained by CBeyond are not searchable for the information that Rightscorp is seeking.   Affidavit of Anton Zouplna, Jr., ¶ 3.   Instead, manual look-ups would be required in most cases, as shown by the sampling of IP addresses reviewed by CBeyond's Data Services Team Manager.   *Id.* ¶¶ 2-3.   A single look-up, performed manually, takes an average of one hour of data technician time.   *Id*. ¶ 3.   At $16.00 per hour, *id*., the search required under the subpoena would not only consume six months of its technician's time, but would

WA 6495453.1

cost CBeyond more than $20,000. The burden on CBeyond would be monumental.

**B.    Compliance could expose CBeyond to significant legal costs.**

Moreover, CBeyond would also be required to incur significant legal costs to ensure that responding to the subpoena does not violate state and federal privacy statutes, and in notifying each user whose personal information is disclosed. The risk of litigation arising from disclosing personal identifying information is very real. For instance, in *Garrett v. Comcast Commc'ns, Inc.*, No. 3:04-CV-693-P, 2004 WL 1660391, at *1 (N.D. Tex. July 23, 2004), a plaintiff sued an ISP that disclosed the plaintiff's personal information pursuant to a 512(h) subpoena. After being sued by a rights holder, the plaintiff "alleged causes of action for invasion of privacy, breach of contract, false misrepresentation, and intentional infliction of emotional distress" against the ISP. *Id*. Congress could not have intended conduit ISPs to be forced to face litigation due to complying with 512(h) subpoenas. *Id***.**

**C.    Rightscorp has a less burdensome alternative to obtain the information sought by its subpoena.**

A far less burdensome mechanism is available to Rightscorp to identify infringers. Rightscorp acknowledges the availability of "John Doe" actions, yet contends that it imposes additional burdens on rights holders. Doc. 11, at 13 n.2. Indeed, Rightscorp cites to a "John Doe" decision, which is distinguishable from

WA 6495453.1

this case, to argue that CBeyond has not demonstrated undue burden.  Doc. 11, at 20.  However, the burden on Rightscorp of filing a John Doe action is much less than that for CBeyond in handling a 512(h) subpoena.  Even if the burdens were equivalent, however, the rights holder should bear the expense when seeking information, not a third-party ISP.  Rightscorp's subpoena should be quashed.

## VI.   RIGHSTCORP SHOULD BE SANCTIONED.

Rightscorp argues that the fact that this is an issue of first impression in this Circuit shields it from sanctions.  Doc. 11, at 24-25.  This is incorrect.  "It simply cannot be the case that a party who raises an issue of first impression in a jurisdiction is entitled to absolute immunity from sanctions in raising the issue." *In re John Richards Homes Bldg. Co., L.L.C.*, No. 02-54689, 2009 WL 5166199, at *3 (E.D. Mich. Dec. 17, 2009).  "Of course, a claim that is utterly insupportable may be sanctionable even if the circuit has not addressed the issue."  *Ozee v. Am. Council on Gift Annuities*, 143 F.3d 937, 941 (5th Cir. 1998) (citations omitted).

Here, Rightscorp's arguments are "utterly unsupportable," as its Opposition fails to identify a single unreversed case that refused to quash a subpoena issued to a conduit ISP.  Doc. 11.  Because its position is frivolous, Rightscorp should be sanctioned.

14

WA 6495453.1

## CONCLUSION

This Court should quash Rightscorp's Subpoena and should order Rightscorp to reimburse CBeyond for its costs incurred in drafting this motion.

Respectfully submitted,

SWIFT CURRIE MCGHEE, & HIERS LLP

By:_____/s/___D. Lee Clayton_____
D. Lee Clayton            GA#601004
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree Street, NE, Suite 300
Atlanta, GA 30309
Phone: 404.874.8800
Fax: 404.888.6199
lee.clayton@swiftcurrie.com

-and-

SPENCER FANE BRITT & BROWNE LLP

By:/s/ Gardiner B. Davis_____
Gardiner B. Davis        Mo. Bar #29127
    Admitted pro hac vice
Carlos Marin            Mo. Bar #66060
    Admitted pro hac vice
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216 (facsimile)
gdavis@spencerfane.com
cmarin@spencerfane.com

ATTORNEYS FOR CBEYOND
COMMUNICATIONS, LLC.

WA 6495453.1

## **7.1 CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D of the Northern District of Georgia, I hereby certify that this document was prepared in Times New Roman font, 14 point, pursuant to L.R. 5.1(C).

This 5th day of January, 2015.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By:    /s/ D. Lee Clayton         
          D. Lee Clayton
          Georgia State Bar No. 601004
          ***Attorney for CBeyond Communications, LLC***

Suite 300, The Peachtree
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
(404) 874-8800 (ph)
Lee.Clayton@swiftcurrie.com

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of January, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Dennis J. Hawk
Business Law Group
3100 Donald Douglas Loup N.
Santa Monica, CA 90405
Tel: (310) 664-8000
Email: dennis@dhwk.com

Lisa Moore
The Moore Firm, LLC
Suite M-102, 887 West Marietta Street
Atlanta, Georgia 30318
Tel: (404) 748 9596
lisa@themoorefirm.com

Michael O. Crain
Crain Law Group, LLC
Suite 24, 297 Prince Avenue
Athens, Georgia 30601
Tel: (706) 548-0970
mocrain@crainlawgroup.com

ATTORNEYS FOR RIGHTSCORP, INC.

By:   /s/ D. Lee Clayton
      D. Lee Clayton
      Georgia State Bar No. 601004
      *Attorney for CBeyond Communications, LLC*

WA 6495453.1

2891673v.1