IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE Subpoena Issued to, Birch Communications, Inc. f/k/a/ CBeyond Communications, LLC. | CIVIL ACTION FILE NO. 1:14-CV-03904-WSD-JFK |

## ORDER

Pending before the court is Movant CBeyond Communications, LLC's ("CBeyond") motion to quash a subpoena issued by Rightscorp, Inc. ("Rightscorp") seeking, pursuant to 17 U.S.C. § 512(h), the production of personal identifying information for more than a thousand of CBeyond's customers. CBeyond also seeks sanctions for the cost associated with moving to quash the subpoena. [Doc. 1]. Rightscorp opposes the motion to quash. [Doc. 11]. CBeyond filed a reply in support of the motion to quash and for sanctions. [Doc. 16]. And Rightscorp filed a motion [Doc. 17] asking to be allowed to file a sur-reply. After consideration of the arguments of the parties and the legal authorities relied on by the parties, the court **GRANTS** the motion to quash but **DENIES** the request for sanctions.

**I.    Background**

On September 19, 2014, Rightscorp, "a representative of various copyright owners . . . on matters involving the infringement of their copyrighted sound recordings[,]" issued a subpoena to CBeyond arising from a miscellaneous action in

the Central District of California pursuant to the Digital Millennium Copyright Act ("DMCA") and Fed. R. Civ. P. 45(c).  [Doc. 1 at 2 (quoting Exhibit A, Hawk Declaration ("Dec.") ¶1) and 3].  The subpoena seeks the "name, address, telephone number, and e-mail address" of more than one-thousand CBeyond customers which are identified by "IP addresses" in the attachment to the subpoena.  [Id. at 3, Exhibit A].  CBeyond is a regional Internet Service Provider ("ISP") which provides internet access to customers but does not store or host the allegedly infringing materials referenced in the subpoena.  [Doc. 1 at 2-3 (citing Exhibit B, Bunce Dec. ¶¶ 4-5)].

**II.   Discussion**

The DMCA provides that "[a] copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection."  17 U.S.C. § 512(h)(1).  The contents of the request must include:

(A) a copy of a notification described in subsection (c)(3)(A);

(B) a proposed subpoena; and

(C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

2

Id. § 512(h)(2). Subsection (c)(3)(A) provides in the part relevant to the issue before the court that the notice include a "take down" provision: "(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material." Id. § 512(c)(3)(A)(iii).

In addition to the notice and "take down" provision, "[t]he 'safe harbor' provisions of Sections 512(a)-(d) give limited protection from copyright liability to four types of 'service providers[ ]'" and are relevant to the court's discussion. In re Subpoena to Univ. of N.C. at Chapel Hill, 367 F. Supp. 2d 945, 948 (M.D. N.C. 2005). As summarized by the district court, these four types of service providers are:

> (a) . . . transitory digital network communications or service providers who simply allow information to pass through their systems from one user of the service to another person; (b) . . . system caching or providers that temporarily store data from one user before passing it on to another person at the request of the user; (c) . . . providers that allow users to store data on the provider's system or network for longer periods of time; and (d) . . . providers that maintain data on their network or system for use with an information tool or service.

Id. at 948-49 (citing 17 U.S.C. § 512(a)-(d)). This "take down" provision, part of the required notice for issuance of a 512(h) subpoena, is not applicable to section (a) service providers, because there are no infringing materials maintained by those entities, and only applies to sections (b)-(d) service providers, who for some period of

3

time hold such data and are required to respond to the take-down notice in order to receive protection from liability.  See <u>Recording Industry Assoc. of America, Inc. v. Verizon Internet Servs., Inc.</u>, 351 F.3d 1229, 1234-35 (D.C. Cir. 2003)[1]; and see <u>In re Charter Communications, Inc., Subpoena Enforcement Matter</u>, 393 F.3d 771, 776-77 (8th Cir. 2005); <u>In re Subpoena to Univ. of N.C. at Chapel Hill</u>, 367 F. Supp. 2d at 951-53.  Accordingly, a § 512(h) subpoena to a service provider who merely acts as a conduit, such as CBeyond, "simply cannot meet the notice requirement of § 512(c)(3)(A)(iii)."  <u>RIAA</u>, 351 F.3d at 1236.

Based on the terms and structure of § 512(h), as outlined above, CBeyond contends that the section does not apply to service providers that act only as a conduit for data transferred between other parties and that do not store data.  [Doc. 1 at 5-8]. The court agrees.  Rightscorp disagrees with this analysis relying on two cases decided by district courts in the District of Columbia, <u>Verizon, In re Verizon Internet Servs., Inc.</u>, 240 F. Supp. 2d 24 (D. D.C. 2003), and <u>Verizon, In re Verizon Internet Servs., Inc.</u>, 257 F. Supp. 2d 244 (D. D.C. 2003), and on the dissenting opinion in <u>In re Charter Communications</u>.  [Doc. 11 at 2].  However, Rightscorp neglects to point out that the District of Columbia district court cases cited were overturned by the court in <u>RIAA</u> and do not constitute prevailing legal authority.  Likewise, the court does not

---

[1]Hereinafter, cited to as <u>RIAA</u>.

find the dissenting opinion in In re Charter Communications persuasive, especially in light the decisions uniformly adopting the reasoning of the court in RIAA and the majority opinion in In re Charter Communications.  See, e.g., Well Go USA, Inc. v. Unknown Participants in Filesharing Swam Identified by Hash: B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB, 2012 WL 4387420 (S.D. Tex. September 25, 2012); In re Maximized Living, Inc. v. Google, Inc., 2011 WL 6749017 (N.D. Cal. December 22, 2011); Interscope Records v. Does 1-7, 494 F. Supp. 2d 388 (E.D. Va. 2007); In re Subpoena to Univ. of N.C. at Chapel Hill, 367 F. Supp. 2d 945.

As stated by the court in Interscope Records, Section 512(h) "does not authorize the issuance of subpoenas against Subsection (a) ISPs, such as [CBeyond], . . . because before a subpoena may issue, the clerk must first receive a copy of the notice described in Subsection (c)(3)(A).  This notice applies only to the categories of ISPs in Subsection (b)-(d).  Upon receipt of the notice, Subsection (b)-(d) ISPs must respond expeditiously to remove, or disable access to, the material that is claimed to be infringing . . . to satisfy their safe harbor requirements.  The notice and take-down provisions outlined above are noticeably absent from Section 512(a)." 494 F. Supp. 2d at 391 (citation and internal quotation marks omitted); and see RIAA, 351 F.3d at 1235 ("No matter what information the copyright owner may provide, the [§ 512(a)]

ISP can neither 'remove' nor 'disable access' to the infringing material because that material is not stored on the ISP's servers"). And, as the district court stated, "§ 512(h) is structurally linked to the storage functions of an ISP and not to its transmission functions, such as those listed in § 512(a)." Interscope Records, 494 F. Supp. 2d at 391 (citations and internal quotation marks omitted). Regarding the arguments that, unless such subpoenas are authorized, due to changes in the type of technology involved with filesharing, owners of copyrights will not be able to stop and deter infringers, the district court noted, "[I]t is the province of Congress, not the courts, to decide whether to rewrite the DMCA in order to make it fit a new and unforseen internet architecture and accommodate fully the varied permutations of competing interests that are inevitably implicated by such new technology." Id. (citations and internal quotation marks omitted). This court concurs.

Accordingly, the court **GRANTS** the motion [Doc. 1] to quash the subpoena.

CBeyond also contends that the subpoena should be quashed because responding would be unduly expensive and time-consuming [Doc. 1 at 8-11], because the subpoena originates from an unconstitutional federal statute, § 512(h) [Id. at 11-12], and because Rightscorp's subpoena did not comply with the procedural requirements of the statute [Id. at 12-13]. Because the court has determined that the subpoena was improperly issued to a subsection 512(a) ISP and for that reason should

6

be quashed, the court will not address the remaining arguments raised by CBeyond and opposed by Rightscorp.  Likewise, because the court is not addressing CBeyond's arguments concerning the burden associated with complying with the subpoena, the court **DENIES** as **MOOT** Rightscorp's motion [Doc. 17] to file a sur-reply brief responding to CBeyond's reply supporting its arguments on that challenge to the subpoena.

### III. Sanctions

Rule 45(c)(1) provides:

> *Avoiding Undue Burden or Expense; Sanctions.*  A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction-which may include lost earnings and reasonable attorney's fees-on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(c)(1) (as amended 2007).  In Huntair, Inc. v. Climatecraft, Inc., 254 F.R.D. 677 (N.D. Okla. 2008), the court concluded that Rule 45 imposes a duty and a basis for sanctions that is in addition to those established in Rule 11 and Rule 26.  Id. at 679.  The court stated:

> "While Rules 11 and 26(g)(2) focus on the actions and motives of the issuing party, Rule 45(c) focuses on the burden imposed on the subpoena recipient. Rule 45(c)(3) requires the court to modify or quash a subpoena that imposes an undue burden on the recipient. Rule 45(c)(1) requires the attorney issuing the subpoena to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena, and

7

directs that the court 'shall enforce this duty.' That language suggests that 'this duty' owed to non-parties is in addition to the duties imposed by Rules 11 and 26(g). Thus, good faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that Rule."

Id. (citations omitted). Accordingly, the court concluded that the test to determine whether sanctions should be imposed "is whether there has been a breach of counsel's duty to take reasonable steps to avoid imposing an undue burden or expense upon the person subject to the subpoena." Id. This court finds that the District Court's analysis in Huntair is persuasive and, therefore, will apply the test set forth in Huntair to the facts of this case. See also Caretolive v. Von Eschenbach, 2008 WL 552431, at *3 (S.D. Ohio February 26, 2008) (noting that 1991 Advisory Committee Notes for Rule 45(c)(1) indicates the Rule's primary purpose was to protect non-party from misuse of the subpoena and that the Rule clearly establishes an obligation on parties "to respect the rights of third parties and [to] avoid using the subpoena process to impose undue burden or expense").

Causing a third-party to incur the expense of litigation, that is, filing a motion to quash, can violate the mandate of Rule 45(c)(1). See, e.g., Caretolive, 2008 WL 552431, at *3 (noting that "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense[,]'" the court concluded that sanctions should be imposed for expenses incurred in addressing

8

invalid subpoenas, especially in light of fact issuing party was informed of defects and failed to act in response); Thompson v. Carrier Corp., 2009 WL 3446391, at *2 (M.D. Ga. October 21, 2009) (imposing sanctions in the amount of reasonable attorney's fees incurred in bringing motion to quash two improperly served Rule 45 subpoenas); Tidwell-Williams v. Northwest Georgia Health System, 1998 WL 1674745, at *1 (N.D. Ga. November 19, 1998) (noting that forcing a non-party to defend against the untenable position of the party who issued the Rule 45 subpoena constitutes an undue burden supporting the imposition of sanctions). However, the court does not find that imposition of sanctions is appropriate in this case.

Although this court agreed with CBeyond's interpretation of § 512(h)'s reach and that a subpoena under this provision cannot be served on a § 512(a) service provider, Rightscorp is correct that this issue is a matter of first impression in the Eleventh Circuit Court of Appeals - which weighs against the imposition of sanctions. See Ozee v. American Council on Gift Annuities, 143 F.3d 937, 941 (5th Cir. 1998) ("While it is true that we have called sanctions 'inappropriate' when the case is one of first impression, . . . the novelty of a legal issue merely cuts against, but does not preclude, the imposition of sanctions.") (quoting Estiverne v. Sak's Fifth Ave., 9 F.3d 1171, 1174 (5th Cir. 1993)); and see Bautista v. Star Cruises, 696 F. Supp. 2d 1274, 1278 (S.D. Fla. 2010) ("The purpose of Rule 11 is not to deter novel legal arguments

9

or cases of first impression but to deter frivolous lawsuits and filings.") (citing <u>Baker v. Alderman</u>, 158 F.3d 516, 524 (11th Cir. 1998)).  Although Rightscorp's reliance on the two reversed decisions of the District of Columbia district court and on the dissenting opinion in <u>In re Charter Communications</u> was not well-placed, quite obviously, there are federal judges who hold the same view of the statute as espoused by Rightscorp.  Rightscorp's interpretation of the terms and structure of § 512(h), although not persuasive, is not frivolous, and the court does not find Rightscorp's issuance of the subpoena unreasonable.  <u>See</u> <u>Mount Hope Church v. Bash Back!</u>, 705 F.3d 418, 429-30 (9th Cir. 2012) ("Sanctions for issuing a [Rule 45] subpoena are in no way supported merely because a party advocated a position in seeking discovery that lost in the end.[ ]  The scope of permissible sanctions under Rule 45(c)(1) should not be so broad as to chill or deter the vigorous advocacy on which our civil justice system depends.").

For these reasons, the court **DENIES** the request [Doc. 1] for sanctions.

## IV.    Conclusion

For the foregoing reasons and cited authority, the court **GRANTS** the motion [Doc. 1] to quash the Rule 45 subpoena issued pursuant to 17 U.S.C. § 512(h), **DENIES** the motion [Doc. 1] for sanctions, and **DENIES** as **MOOT** the motion [Doc. 17] to file a sur-reply.  The proceedings in this court having been concluded, the clerk

10

of court is **DIRECTED** to terminate this cause of action and to terminate the reference to the Magistrate Judge.

**SO ORDERED THIS** 16th day of January, 2015.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE