UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| In Re Subpoena Issued to<br>Birch Communications, Inc. f/k/a<br>CBeyond Communications, LLC | Case No. 1:14-cv-03904-WSD-JFK |

**RIGHTSCORP'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON CBEYOND'S MOTION TO QUASH**

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Rightscorp, Inc. ("Rightscorp") respectfully serves and files the following objections to Magistrate Judge Janet F. King's January 16, 2015 order (ECF No. 18) granting the motion filed by Birch Communications, Inc. f/k/a CBeyond Communications, LLC ("CBeyond") to quash Rightscorp's subpoena (the "Order").

## I.   BACKGROUND

Rightscorp is a technology company that works on behalf of copyright owners to identify online infringements. Rightscorp served the subpoena at issue on CBeyond (the "Rightscorp Subpoena") pursuant to Section 512(h) of the Copyright Act, 17 U.S.C. § 512(h), on behalf of BMG Rights Management (US) LLC ("BMG"). BMG is one of the largest music publishers in the world, representing musical works by the likes of Ray Charles, Adele, and Outkast.

Section 512(h) permits a copyright owner or its agent to subpoena an Internet service provider for the identity of its infringing subscribers. Rights holders typically are only able to identify the numeric Internet Protocol ("IP") address associated with a particular infringer, not the infringer's actual name and physical address.  They need Internet service providers to identify the infringer associated with the IP address. The Rightscorp Subpoena at issue in this case sought the name, address, telephone number, and email address of only 71 distinct CBeyond subscribers who were collectively responsible for 1,326 separate instances of copyright infringement.

CBeyond filed its motion to quash the Rightscorp Subpoena and for sanctions on October 17, 2014 (ECF No. 1) on the grounds that the Rightscorp Subpoena was not authorized by Section 512(h) and, even assuming it was authorized, was nonetheless unduly burdensome. Rightscorp opposed CBeyond's motion on December 8, 2014 (ECF No. 11), and CBeyond filed a reply on January 5, 2015 (ECF No. 16). Because CBeyond introduced an affidavit in support of its reply that for the first time attempted to substantiate the purported burden of responding to the Rightscorp Subpoena, Rightscorp filed a motion for surreply on January 15, 2015 to address this new evidence (ECF No. 17).

On January 16, 2015, the Magistrate Judge issued the Order granting CBeyond's motion to quash the subpoena and denying CBeyond's motion for sanctions. Because the Magistrate Judge held that Section 512(h) did not authorize the Rightscorp Subpoena, she did not address the burden of responding to the subpoena and thus denied Rightscorp's motion for surreply as moot. This action was then immediately terminated.

## II.  STANDARD OF REVIEW

The standard of review for a matter decided by a magistrate judge depends on whether the matter properly is categorized as "nondispositive" or "dispositive." An order on a nondispositive matter must be set aside if it "is clearly erroneous or is contrary to law," whereas orders on a dispositive matter must be reviewed *de novo*. Fed. R. Civ. P. 72(a), (b); L.R. 72.1; 28 U.S.C. § 636(a), (b).

Section 636(b)(1)(A) contains a nonexhaustive list of matters that are considered dispositive, but courts are required to look past labels and evaluate the effect of the magistrate judge's order on the litigation. 12 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3068.2 (2d ed.). As a result, although a motion to quash typically is a nondispositive matter, numerous courts (including district courts in this circuit) have deemed motions to enforce/quash a subpoena as dispositive where, as here, resolution of the motion is the sole issue in the case

(e.g., in the case of administrative subpoenas). *See, e.g.*, *NLRB v. Durham Sch. Servs., L.P.*, No. 3:14mc52/MCR/EMT, 2014 U.S. Dist. LEXIS 180085, at *9 (N.D. Fla. Oct. 10, 2014); *NLRB v. Edwards*, No. 2:11MC3546-WKW, 2012 U.S. Dist. LEXIS 9484, at *1 n.1 (M.D. Ala. Jan. 10, 2012); *NLRB v. Frazier*, 966 F.2d 812, 817-18 (3d Cir. 1992); *Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 13-50212, 2013 U.S. Dist. LEXIS 61616, at *8-9 (E.D. Mich. Apr. 11, 2013) (collecting cases); *EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 989 (D. Minn. 2010) (collecting cases). In keeping with this authority, courts have treated a magistrate judge's decision to quash (or not quash) a Section 512(h) subpoena as subject to *de novo* review. *See, e.g.*, *In re DMCA Subpoena to Tumblr, Inc.*, No. 14-91209-NMG, 2014 U.S. Dist. LEXIS 157733, at *4 n.4 (D. Mass. Oct. 7, 2014); *In re Digital Millennium Copyright Act*, No. MS-07-6236-EJL-MHW, 2007 U.S. Dist. LEXIS 97277, at *1 (D. Idaho Nov. 16, 2007); *In re Subpoena to Univ. of North Carolina at Chapel Hill*, No. 1:03MC138 (M.D.N.C. Sept. 27, 2005).

CBeyond's motion to quash is the sole issue in the case, and the Magistrate Judge's Order resulted in a termination of this action. Accordingly, this matter is dispositive and is subject to *de novo* review.[1]

---

[1] Although the Order is styled as an "order" rather than a "report and recommendation," the Magistrate Judge only had the legal authority to issue proposed findings and recommendations. *See* 28 U.S.C. § 636(b).

## III.   OBJECTIONS

**A.   The Magistrate Judge's Factual Finding Regarding the Number of CBeyond Subscribers Subject to Rightscorp's Subpoena Is Not Supported by the Evidence.**

As an initial matter, the Order makes a factual finding that the Rightscorp Subpoena sought information "for more than a thousand of CBeyond's customers." (Order at 1.) The record evidence does not support this finding. Although the Rightscorp Subpoena identified 1,326 separate instances of copyright infringement, the Rightscorp Subpoena only required CBeyond to provide information for <u>71</u> unique subscribers.

It is easy to understand the Magistrate Judge's confusion and resulting factual error. CBeyond computed the purported burden of responding to the subpoena by mistakenly contending that it would need to lookup a different subscriber for each instance of infringement. (CBeyond's Reply at 12-13.) That simply is not the case. There are only 71 unique CBeyond subscribers that require a lookup (notably, a few repeat infringers are responsible for hundreds of infringements of BMG works, not to mention other rights holders' works, and are continuing to infringe unabated). Rightscorp provided to CBeyond with the subpoena a list of these 71 unique subscribers by IP address to make the lookups

5

easier.[2] (CBeyond's Mot., Ex. A. (on the final page of the exhibit); Decl. of Robert Steele ¶ 2, Ex. A.)

Rightscorp respectfully submits that this plainly erroneous factual finding should be corrected in this Court's final opinion.

**B.    The Magistrate Judge's Holding that Section 512(h) Did Not Authorize Rightscorp's Subpoena Is Contrary to the Text, Structure, Purpose, and Legislative History of the Statute.**

In 1998, Congress enacted the Digital Millennium Copyright Act ("DMCA"), which was a compromise between two competing concerns. On one hand, Congress wanted to thwart the "massive piracy" of copyrighted works on the Internet, S. Rep. No. 105-190, at 8 (1998) (although it unfortunately did not cure the epidemic; for example, music sales in the United States dropped from $14.6 billion at the emergence of Internet file sharing to $7 billion in 2013, *see* RIAA, "Piracy: Scope of the Problem," www.riaa.com). On the other hand, Congress hoped to encourage development of the Internet by providing service providers with some certainty that they would not incur liability for infringement by their users if they cooperated with rights holders and complied with certain other threshold requirements.

---

[2] As Rightscorp explained in its Surreply, similarly situated service providers with this information routinely respond quickly to subpoenas identical to the one at issue. (Rightscorp Surreply at 3-4; Decl. of Robert Steele, ECF No. 17-1, ¶ 3.)

This compromise is reflected in a series of "safe harbors" set forth in subsections (a)-(d) of Section 512 of the Copyright Act. Each safe harbor addresses a different function. Subsection (a) limits the liability of transitory service providers—that is, service providers that act as a mere conduit. Subsections (b) through (d) limit the liability of service providers that are caching, storing, or linking to infringing material.

This case involves an issue of first impression in the Eleventh Circuit—namely, whether Section 512(h) of the Copyright Act authorizes a subpoena to service providers that only provide "transitory" functions (as described in Section 512(a)). CBeyond does not dispute that Section 512(h) authorizes a subpoena to service providers providing "caching," "storage," and "linking" functions (as described in Sections 512(b)-(c)) but contends that it does not provide any of these functions for the infringements identified in the Rightscorp Subpoena.

The first court to squarely address this issue found that Section 512(h) authorizes subpoenas to transitory service providers. *In re Verizon Internet Services, Inc.*, 240 F. Supp. 2d 24 (D.D.C. 2003) ("Verizon I"); 257 F. Supp. 2d 244 (D.D.C. 2003) ("Verizon II"). Shortly thereafter, another district court came to the same conclusion. *In re Charter Communications, Inc.*, No. 4:03MC273 (D.

Mo. Nov. 11, 2003) (order). The United States government intervened in both of these cases in favor of the copyrights owners' position.

On appeal, both of these decisions were reversed. The D.C. Circuit held that the language and structure of Section 512 indicated that Section 512(h) was not intended to authorize subpoenas to transitory service providers. *Recording Industry Association of America, Inc. v. Verizon Internet Services, Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ("Verizon III"). Similarly, the majority opinion in *In re Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771 (8th Cir. 2005) ("Charter Majority"), adopted the reasoning of *Verizon III*, although Judge Murphy of the D.C. Circuit wrote an extensive dissenting opinion ("Charter Dissent") that, like the prior district court opinions, squarely supports the view that Section 512(h) authorizes subpoenas to transitory service providers. A handful of district courts in other circuits subsequently addressed this issue but largely adopted the reasoning of *Verizon III* without discussion.[3] (*See* CBeyond's Mot. at 7 n.2 (citing cases).)

It is axiomatic that "the decisions of one circuit are not binding on other circuits." *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981). For the

---

[3] The only other decision that devoted any significant discussion to the issues is *In re Subpoena to University of North Carolina at Chapel Hill*, 367 F. Supp. 2d 945 (M.D.N.C. 2005).

reasons set forth in Rightscorp's Opposition, and in *Verizon I*, *Verizon II*, and *Charter Dissent*, and endorsed by the United States government,[4] this Court should hold that Section 512(h) authorizes subpoenas to transitory service providers.

Most notably, the plain, unambiguous language of the statute authorizes subpoenas to "service providers," a defined term that includes Section 512(a) service providers. This resolves the issue because "[i]t is an elementary precept of statutory construction that the definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute." *Fla. Dep't of Banking & Fin. v. Bd. of Governors of Fed. Reserve Sys.*, 800 F.2d 1534, 1536 (11th Cir. 1986). (*See also* Rightscorp's Opp'n at 8-10.)

The Magistrate Judge adopted CBeyond's position that Section 512(h) was not intended to address Section 512(a) service providers because one of the conditions of a valid subpoena is that the request include a notification of claimed infringement that "satisfies the provisions of subsection (c)(3)(A)." (CBeyond's Mot. at 7-8 (citing *Verizon III* and *Charter Majority*).) As explained in Rightscorp's Opposition (pp. 10-14), however, CBeyond's position is not supported by the structure of the DMCA.

---

[4] *See, e.g.*, *In re Subpoena to University of North Carolina at Chapel Hill*, No. 1:03-mc-00138-WLO (M.D.N.C.), ECF No. 40 (Intervenor United States' Mem. of Law in Opp'n to John Doe's Mot. to Quash), ECF No. 49 (Intervenor United States of America's Objections to the Magistrate's April 14, 2005 Order).

At a minimum, the statute is ambiguous. This is evidenced by the split amongst jurists who have interpreted Section 512(h). *See Estate of Shelfer v. Commissioner*, 86 F.3d 1045, 1048 (11th Cir. 1996) ("Our conclusion [that the statute is ambiguous] is further supported by the lack of consensus among jurists as to the clear meaning of the statute."); *Myrick v. Freuhauf Corp.*, 13 F.3d 1516, 1527 (11th Cir. 1994) ("[T]he justices split four to three on the scope of that express pre-emption clause, which was debatable among jurists of reason. In other words, the statutory language was ambiguous."); *Bargainear v. Zenk*, No. 1:06-CV-1232-JEC-CCH, 2007 U.S. Dist. LEXIS 52561, at *29 (N.D. Ga. Jan. 31, 2007) ("[R]easonable jurists have split on the proper interpretation, so the interplay of the statutes must, at best, be considered ambiguous.").

Accordingly, this Court should look at extrinsic evidence of Congressional intent, including the purpose of the DMCA and its legislative history, to interpret Section 512(h). The Magistrate Judge's Order did not address the clear evidence of legislative intent.

As set forth in Rightscorp's Opposition, the purpose and history of Section 512 supports the view that Section 512(h) authorizes subpoenas to transitory service providers. (*See* Rightscorp's Opp'n at 14-16.) There simply is no justification or rationale to limit the subpoena authority under Section 512(h) to

transitory service providers. The burden for the service provider is the same regardless of which safe harbor is implicated, and is even more necessary in the case of a Section 512(a) service provider because a rights holder cannot force a service provider in compliance with the safe harbor to disable access to a work.

As noted by the court in *Verizon I*, courts "would create a huge loophole in Congress's effort to prevent copyright infringement on the Internet" by excluding from the subpoena power a huge swath of service providers. 240 F. Supp. 2d at 35. If Congress had intended to carve out a "huge loophole," one would expect to see considerable debate over the issue. No such debate occurred precisely because no one—not Congress, not the rights holders, not the service providers—viewed Section 512(h) as limited to subsection (b), (c), and (d) service providers.

As Judge Learned Hand once noted: "[I]t is one of the surest indexes of a mature and developed jurisprudence . . . to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737 (2d Cir. 1945), *aff'd*, 326 U.S. 404 (1945); *see also Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1529 (11th Cir. 1996) (citing quote with approval). Given the purpose of the DMCA to combat "massive piracy," S. Rep. No. 105-190, at 8, Congress simply could not have intended to handicap rights holders by creating a special

exception to the subpoena provision for transitory service providers, *see Hughey*, 78 F.3d at 1529 ("Our jurisprudence has eschewed the rigid application of a law where doing so produces impossible, absurd, or unjust results.").

In short, for the reasons set forth in this objection and comprehensively addressed in Rightscorp's Opposition, the text, structure, purpose and legislative history of the DMCA all point to the inescapable conclusion that the Section 512(h) subpoena provision applies to transitory service providers.

## IV.   CONCLUSION

For the foregoing reasons, Rightscorp respectfully asks this Court, upon reviewing the Magistrate Judge's Order *de novo*, not to adopt those portions of the Order objected to herein. Specifically, the factual error in the Order should be corrected, and CBeyond's motion to quash should be denied.

This 30th day of January, 2015.

    Respectfully submitted,

    /s/ Lisa Moore
    Lisa Moore (Georgia Bar No. 419633)
    THE MOORE FIRM, LLC
    Suite M-102, 887 West Marietta Street
    Atlanta, Georgia 30318
    (404) 748-9596 (telephone)
    (404) 565-2941 (facsimile)
    lisa@themoorefirm.com

    Michael O. Crain (Georgia Bar No. 193079)

CRAIN LAW GROUP, LLC
Suite 24, 297 Prince Avenue
Athens, GA 30601
(706) 548-0970 (telephone & facsimile)
mocrain@crainlawgroup.com

*Attorneys for Rightscorp, Inc.*

13

## CERTIFICATION AS TO FONT

In accordance with Local Rule 7.1(D), the undersigned certifies that RIGHTSCORP'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON CBEYOND'S MOTION TO QUASH was prepared with Times New Roman 14, a font and point selection approved by the Court in Local Rule 5.1(C).

DATED: January 30, 2015

                                      /s/ Lisa Moore
                                      Lisa Moore
                                      Georgia Bar No. 419633

## CERTIFICATE OF SERVICE

This is to certify that, on January 30, 2015, I electronically filed RIGHTSCORP'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON CBEYOND'S MOTION TO QUASH with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to the following attorneys of record for CBeyond:

    D. Lee Clayton        lee.clayton@swiftcurrie.com
    Carlos Marin         cmarin@spencerfane.com
    Gardiner B. Davis    gdavis@spencerfane.com

DATED: January 30, 2015

                                          /s/ Lisa Moore
                                          Lisa Moore
                                          Georgia Bar No. 419633