IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| IN RE SUBPOENA ISSUED TO<br>BIRCH COMMUNICATIONS, INC.<br>f/k/a CBeyond Communications, LLC, | 1:14-cv-3904-WSD |

## OPINION AND ORDER

This matter is before the Court on Rightscorp, Inc.'s ("Rightscorp")

Objections [19] to Magistrate Judge Janet F. King's January 16, 2015, Order [18].[1]

In her January 16th Order, Magistrate Judge King granted CBeyond

Communications, LLC's ("CBeyond")[2] Motion to Quash [1] a subpoena issued by

Rightscorp, but denied CBeyond's request for sanctions, contained in its Motion to

Quash.  Also before the Court is CBeyond's Second Motion for Sanctions [21],

contained in its Response to Rightscorp's Objections.

---

[1]     Although docketed as an appeal, Rightscorp's filing is titled an "objection" to Magistrate Judge King's January 16th Order.  Rightscorp argues that Magistrate Judge King had authority only to issue a report and recommendation, not an order, on CBeyond's Motion to Quash.

[2]     CBeyond was acquired, and is now controlled, by Birch Communications, Inc.  (Mot. to Quash at 2).

## I.    BACKGROUND

Rightscorp is a "representative of various copyright owners . . . on matters involving the infringement of their copyrighted sound recordings."  (Mot. to Quash [1] at 2) (quoting Rightscorp Decl. at ¶ 1).

CBeyond is a regional Internet Service Provider ("ISP") that provides internet access to its customers.  (Id.).

On September 19, 2014, Rightscorp obtained from the United States District Court for the Central District of California a subpoena (the "Subpoena"), pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.[3]  The Subpoena seeks the "name, address, telephone number, and email address sufficient to identify the alleged infringers of copyrighted sound recordings identified by [Internet Protocol ("IP")] addresses in the notices attached to . . . th[e] Subpoena."  ([1.1] at 2).  The notices attached to the Subpoena detail 1,326 separate instances of alleged copyright infringement by CBeyond customers using 71 unique IP addresses.[4]

---

[3]    The Subpoena arises from a miscellaneous action in the Central District of California.

[4]    To the extent the Magistrate Judge stated that the Subpoena seeks the identifying information of more than 1,000 CBeyond customers, it appears that "a few repeat [alleged] infringers are responsible for hundreds of infringements." (Objs. at 5).

3

On October 17, 2014, CBeyond filed its Motion to Quash [1].  CBeyond argues, among others, that Section 512(h) authorizes issuance of a subpoena only to an ISP that performs a storage function, and because CBeyond does not store or host the allegedly infringing materials referenced in the Subpoena, the Subpoena is not valid.[5]  CBeyond also seeks to recover its attorney's fees and costs incurred in defending against the Subpoena.

On January 16, 2015, Magistrate Judge King issued her Order granting CBeyond's Motion to Quash.  Magistrate Judge King found that Section 512(h)(2) requires a copyright owner to submit, with its request for subpoena, a copy of a notice containing information required under Section 512(c)(3)(A); that Section 512(c)(3)(A)(iii) requires that the copyright holder identify the allegedly infringing material to be removed "and information reasonably sufficient to permit the service provider to locate the material;" and that a copyright owner cannot comply with this requirement regarding conduit ISPs, like CBeyond, that merely allow for transfer of information between its users, because there are no infringing materials

---

[5]    CBeyond also argues that complying with the Subpoena would be unduly burdensome and expensive; that Section 512(h) is unconstitutional because it allows a subpoena to issue without a live controversy; and because the Subpoena does not comply with procedural requirements.  Because the Court finds that Section 512(h) does not apply to ISPs like CBeyond that act as a conduit for data transfer between other parties, the Court does not reach the merits of CBeyond's other arguments.

maintained by those types of ISPs.  Magistrate Judge King thus concluded that the

Subpoena was not authorized under Section 512(h).  Magistrate Judge King also

declined to award sanctions against Rightscorp, concluding that issuance of a

subpoena to a conduit ISP under Section 512(h) was an issue of first impression in

our Circuit, and that Rightscorp's interpretation of Section 512(h), "although not

persuasive, is not frivolous, and . . . Rightscorp's issuance of the subpoena [was

not] unreasonable."  (Order at 9-10).

On January 30, 2015, Rightscorp filed its Appeal of Magistrate Judge King's

January 16th Order.

On February 12, 2015, CBeyond filed its Response and again moved for

sanctions against Rightscorp.

## II.    DISCUSSION

### A.    Standard of Review

The parties dispute whether the Motion to Quash is a dispositive motion and

thus whether Magistrate Judge King had the authority to decide it.  Rightscorp

contends that the Court should construe the January 16th Order as a Report and

Recommendation ("R&R"), subject to a de novo review of Rightscorp's

objections.  CBeyond argues that, because a motion to quash is not listed as a

matter excepted from a magistrate judge's authority, Magistrate Judge King's

4

Order should be reviewed under the "clearly erroneous or contrary to law" standard.

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge has the authority to hear and determine any nondispositive pretrial matter, and "the court may reconsider any pretrial matter [within the jurisdiction of the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a) (district judge "must consider timely objections and modify or set aside any part of the [magistrate judge's] order [on a nondispositive pretrial matter] that is clearly erroneous or is contrary to law").

Section 636(b)(1)(A) excludes from a magistrate judge's authority "a motion for injunctive relief, for judgment on the pleadings, for summary judgment . . . to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). For these dispositive motions, a magistrate judge may issue propose findings and recommendations, which the court may accept, reject, or modify. 28 U.S.C. § 636(b)(1)(B). A district judge "shall made a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

The Court concludes that CBeyond's Motion to Quash is a dispositive motion.  Although typically "a motion to enforce [or quash] a subpoena in a civil action would be a routine matter which a magistrate judge could dispose of as a nondispositive motion," here, the Subpoena is "not part of a larger case before the court," and a decision on the Motion to Quash will end the proceeding in this Court.  Cf. NLRB v. Frazier, 966 F.2d 812, 817 (3rd Cir. 1992) (motion filed in district court to enforce subpoena issued by NLRB in administrative proceeding was dispositive; district court filing was independent proceeding, decision on motion would effectively end litigation in district court, and thus motion to enforce agency subpoena was more like a motion to dismiss).

The Subpoena in this action arose from alleged copyright infringement that is not yet—and may never become—the subject of an action pending in any court.  Rightscorp obtained the Subpoena pursuant to 17 U.S.C. § 512(h), the purpose of which is "to obtain the identity of an alleged infringer . . . [to] be used for the purpose of protecting rights under this title," including filing a complaint against the alleged infringer.  See 17 U.S.C. § 512(h)(2)(C).  "[T]he question of whether or not to enforce the [S]ubpoena is the only matter before the [C]ourt" and "[o]nce the [C]ourt grants or quashes the [S]ubpoena, it determines with finality the duties of the parties."  See Frazier, 966 F.2d at 817-818.  The Court concludes that

CBeyond's Motion to Quash is a dispositive motion.  Cf. id.; In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98-19, 182 F.R.D. 196 (E.D. Va. 1998) (because motion to enforce civil investigative demand subpoena was a dispositive motion, district court construed magistrate judge's order enforcing subpoena as a report and recommendation subject to de novo review); NLRB v. Durham School Servs., L.P., 2014 WL 7662293, at *5 (N.D. Fla. Oct. 10, 2014) (finding motion to enforce administrative subpoena dispositive and issuing R&R; stating, "[w]hile a motion to enforce a subpoena arising as part of a discovery dispute in a civil action might ordinarily be handled by a magistrate judge as a nondispositive matter, a proceeding [to enforce an administrative subpoena] does not occur during the discovery process of a civil case at large. Rather, this enforcement proceeding is in essence a civil action unto itself.").[6]

Having found that the Motion to Quash is a dispositive motion, the Court construes Magistrate Judge King's January 16th Order as a Report and

---

[6]     That a district court's order on a motion to quash an administrative subpoena is final and appealable supports that a motion to quash, under some circumstances, can be dispositive.  See Robinson v. Tanner, 798 F.2d 1378, 1380 n.3 (11th Cir. 1986) (describing district court orders enforcing IRS and EEOC subpoenas as "immediately appealable because the district court case consisted of only the government's request for the order compelling discovery") (collecting cases); Falsone v. United States, 205 F.2d 734, 737 (5th Cir. 1953) (discussing distinction between "orders which are merely interlocutory steps in judicial proceedings and are not appealable and court orders ancillary to an administrative proceeding and final because they complete the court's action").

Recommendation.  In view of Rightscorp's objections, the Court conducts a de novo review of the record.  See 28 U.S.C. § 636(b)(1).

> B.  Motion to Quash the Subpoena

> 1.  Framework of the DMCA

17 U.S.C. § 512(h) permits a copyright owner, or its agent, to "request the clerk of any United States district court to issue a subpoena to [an ISP] for identification of an alleged infringer."  17 U.S.C. § 512(h)(1).  A request for issuance of a subpoena must include, among others, a "copy of a notification described in subsection (c)(3)(A)."  17 U.S.C. § 512(h)(2)(A).[7]  Section 512(c)(3)(A) requires that the notification include:

> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

17 U.S.C. § 512(c)(3)(A)(iii).  *"If the notification filed satisfies the provisions of subsection (c)(3)(A)*, the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the

---

[7]    The request must also include the proposed subpoena directed to the ISP, and a sworn declaration that the purpose of the subpoena is "to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting" rights under the copyright laws of the United States. 17 U.S.C. §§ 512(h)(2)(A), (C).

[ISP]."  17 U.S.C. § 512(h)(4) (emphasis added).  "*Upon receipt of the issued subpoena, either accompanying or subsequent to the receipt of a notification described in subsection (c)(3)(A)*, the service provider shall expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena . . . ."  17 U.S.C. § 512(h)(5) (emphasis added).  A notification that satisfies Section 512(c)(3)(A) is thus a mandatory part of the subpoena request and a condition precedent to issuance of, and compliance with, a subpoena under Section 512(h).  See 17 U.S.C. § 512(h)(2), (4)-(5).

The notification provision of Section 512(c)(3)(A) is in one of the DCMA's "safe harbor" provisions, protecting ISPs from liability for copyright infringement if certain conditions are met.  The safe harbor provisions correspond to different types or functions of ISPs, and can be summarized as follows:

> (a) . . . transitory digital network communications or [ISPs] who simply allow information to pass through their systems from one user of the service to another person;
>
> (b) . . . system caching or [ISPs] that temporarily store data from one user before passing it on to another person at the request of the user;
>
> (c) . . . [ISPs] that allow users to store data on the provider's system or network for longer periods of time; and
>
> (d) . . . [ISPs] that maintain data on their network or system for use with an information location tool or service.

In re Subpoena to Univ. of N.C. at Chapel Hill, 367 F. Supp. 2d 945, 948-949

(M.D.N.C. 2005) (citing 17 U.S.C. § 512(a)-(d)).[8]  Although the notification

provision in Section 512(c)(3)(A) corresponds with the third type of safe harbor,

for "[i]nformation residing on systems or networks at the direction of users," it is

also referenced in subsections (b) and (d)—the "system caching" and "information

location" safe harbors—and all three subsections provide that an ISP is protected

from liability if it "responds expeditiously to remove, or disable access to, the

material that is claimed to be infringing *upon notification of claimed infringement*

as described in [Section 512](c)(3)."  See 17 U.S.C. §§ 512(b)(2)(E), 512(c)(1)(C),

512(d)(3) (emphasis added).  As the Eighth Circuit observed, "a specific purpose

of the notification provision is to allow an ISP, after notification, the opportunity to

remove or disable access to infringing material and thereby protect itself from

liability for copyright infringement."  In re Charter Commc'ns, Inc. Subpoena Enf.

Matter, 393 F.3d 771, 776 (8th Cir. 2005).

        Section 512(a), on the other hand, does not reference Section 512(c)(3) and

does not contain a requirement that the ISP remove or disable access to allegedly

infringing material.  This is likely because Section 512(a) applies "where an ISP

merely acts as a conduit for infringing material—rather than directly storing,

caching, or linking to infringing material—[and thus] the ISP has no ability to

---

[8]     Section 512(e) contains an additional safe harbor provision for a nonprofit
educational institution ISP.

remove the infringing material from its system or disable access to the infringing material." Id.; see also Univ. of N.C. at Chapel Hill, 367 F. Supp. 2d at 949.

### 2. Analysis

Although the Eleventh Circuit has not considered the issue, the Courts of Appeals for the District of Columbia Circuit and the Eighth Circuit have held, based on the plain language and structure of the DCMA, that Section 512(h) does not authorize issuance of a subpoena to a Section 512(a) ISP, like CBeyond, that acts as a conduit for data transfer between two users, but does not store any material on its servers.

In Recording Indus. Assoc. of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229 (D.C. Cir. 2003) (hereinafter, "RIAA"), the court held that a subpoena cannot be issued, under Section 512(h), to a Section 512(a) ISP because a conduit ISP does not store the infringing material on its server, and thus the copyright owner cannot meet the requirements of Section 512(c)(3)(A)(iii), a prerequisite for issuance of the subpoena. The court reasoned:

> No matter what information the copyright owner may provide, the ISP can neither 'remove' nor 'disable access to' the infringing material because that material is not stored on the ISP's servers. [The conduit ISP] cannot remove or disable one user's access to infringing material resident on another user's computer because [the conduit ISP] does not control the content on its subscribers' computers.

Id. at 1235. The court rejected the copyright owner's claim that it "substantially

complied" with the notification requirement of Section 512(c)(3)(A), because, even
though the notice complied with Section 512(c)(3)(A)(i)-(ii), and (iv)-(vi), the
notice failed to identify material to be removed or access to which disabled and
"identifi[ed] absolutely no material [the ISP] could remove or access to which it
could disable. . . ." Id. at 1236.  The court also rejected the copyright owner's
claim that the broad definition of "service provider" in Section 512(k)(1)(B) makes
Section 512(h) applicable to an ISP regardless of the function it performs.  The
court stated:

> [H]owever broadly "[internet] service provider" is defined in
> § 512(k)(1)(B), a subpoena may issue to an ISP only under the
> prescribed conditions regarding notification. . . . [t]he validity of a
> § 512(h) subpoena still depends upon the copyright holder having given
> the ISP, however defined, a notification effective under § 512(c)(3)(A).
> And as we have seen, any notice to an ISP concerning its activity as a
> mere conduit does not satisfy the condition of § 512(c)(3)(A)(iii) and is
> therefore ineffective.

Id. at 1236 (first alteration in original).  The court analyzed the structure of Section
512, including that Section 512(h) cross references Section 512(c)(3), and
concluded that "the references to § 512(c)(3)" in Section 512(b)-(d) "lead
inexorably to the conclusion that § 512(h) is structurally linked to the storage
functions of an ISP and not to its transmission functions, such as those listed in
§ 512(a)." Id. at 1237.

In <u>Charter</u>, the Eighth Circuit adopted the D.C. Circuit's reasoning in <u>RIAA</u> and held that, "because the parties do not dispute that the ISP's function was limited to acting as a conduit for the allegedly copyright protected material, . . . § 512(h) does not authorize the subpoenas issued [to the ISP]." <u>Charter</u>, 393 F.3d at 777. Other district courts, relying on <u>RIAA</u> and <u>Charter</u>, also have held that Section 512(h) does not authorize issuance of a subpoena to a Section 512(a) ISP. <u>See, e.g.</u>, <u>Univ. of N.C. at Chapel Hill</u>, 367 F. Supp. 2d 945; <u>Well Go USA, Inc. v. Unknown Participants in Filesharing Swam Identified by Hash: B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB</u>, No. 4:12-cv-00963, 2012 WL 4387420 at *2-3 (S.D. Tex. Sept. 25, 2012) (denying request to issue subpoena to conduit ISPs under Section 512(h), but permitting limited discovery under Rule 45, subject to protective order); <u>Interscope Records v. Does 1-7</u>, 494 F. Supp. 2d 388 (E.D. Va. 2007).

The Court finds the opinions of the Courts of Appeals for the District of Columbia Circuit in <u>RIAA</u> and the Eighth Circuit majority in <u>Charter</u> persuasive and well-reasoned.[9] The plain language of Section 512(h) requires, as a

---

[9] Rightscorp relies on <u>In re Verizon Internet Servs., Inc.</u>, 240 F. Supp. 2d 24 (D.D.C. 2003) ("<u>Verizon I</u>") and 257 F. Supp. 2d 244 (D.D.C. 2003) ("<u>Verizon II</u>"), to support that the Subpoena was authorized under Section 512(h) because the plain language of the statute authorizes issuance of a subpoena to a "service provider," which is broadly defined in Section 512(k) and includes Section 512(a)

prerequisite to issuances of a subpoena, that a copyright owner must file a notice that complies with Section 512(c)(3)(A), including that identifies the allegedly infringing material to be removed or access to which must be disabled.  CBeyond does not store or host on its servers the allegedly infringing material, and thus there is no allegedly infringing material to be removed or access to which must be disabled.  Because Rightscorp therefore cannot satisfy the notice requirements of Section 512(c)(3)(A), a subpoena cannot be issued under Section 512(h).

That Section 512(c)(3)(A) notice is referenced in Sections 512(b)-(d), but not in Section 512(a), supports that the notice requirement is related to an ISP's participation in the storage of allegedly infringing materials.  Because Section 512(c)(3)(A) notice is a prerequisite to issuance of a subpoena under Section 512(h) and thus the required notice does not apply to a Section 512(a) ISP, further supports that the subpoena power of Section 512(h) does not apply to an ISP, like CBeyond, that acts as a conduit for transmission of allegedly infringing materials.

conduit ISPs; (ii) Section 512(c)(3) notice is referenced throughout the DMCA, and therefore it applies to more than just Section 512(c) "storage" ISPs; and (iii) the purpose of the subpoena provision—to "combat 'massive piracy'" of copyrighted materials—would be subverted if Section 512(h) applied to all ISPs except Section 512(a) conduit ISPs.  These arguments were considered and rejected by the court in RIAA, which reversed the district court's opinions in Verizon I and Verizon II.  See RIAA, 351 F.3d 1236-1238.  The Court also does not find persuasive the dissent in Charter, which applies reasoning similar to Verizon I and Verizon II.

14

Rightscorp relies on the legislative history of the DCMA to support that "[t]here simply is no justification or rationale to limit the subpoena authority under Section 512(h) to transitory service providers" and that excluding Section 512(a) ISPs from the subpoena provision "would create a huge loophole in Congress's effort to prevent copyright infringement on the Internet."  (Resp. [11] at 15-17).  It is well-settled that "resort to legislative history is unnecessary, and indeed, improper, where the statute's terms are plain and unambiguous."  CBS Broadcasting, Inc. v. EchoStar Commc'n Corp., 265 F.3d 1193, 1213 (11th Cir. 2001) (citations omitted).  Having found that the plain language of Section 512(h) requires, as a prerequisite to issuance of a subpoena, notice that complies with Section 512(c)(3), and that notice to a conduit ISP simply cannot satisfy the requirements of Section 512(c)(3), the Court does not consider Rightscorp's arguments based on legislative history.[10, 11]

---

[10]    Even if the Court considered it, the legislative history of the DCMA does not support Rightscorp's position.  At the time the DCMA was enacted, "Congress had no reason to foresee the application of Section 512(h) to [internet users exchanging copyright materials directly, such as through file-sharing software], nor did they draft the DMCA broadly enough to reach the new technology when it came along."  See RIAA, 351 F.3d at 1238.  To the extent Rightscorp argues that the legislative history shows that the purpose of the DCMA was to prevent widespread copyright infringement, "[i]t is not the province of the courts . . . to rewrite the DMCA in order to make it fit a new and unforeseen internet architecture, no matter how damaging that development has been to the music industry . . . .  The plight of copyright holders must be addressed in the first instance by the Congress . . . ."  Id.

C.       CBeyond's Motions for Sanctions

Rule 45(c)(1) of the Federal Rules of Civil Procedure provides that the Court

may impose a sanction on a party who fails to "take reasonable steps to avoid

imposing undue burden or expense on a person subject to [a] subpoena."

Fed. R. Civ. P. 45(c)(1).[12]

The Court finds that sanctions are not supported by the record in this case.

The issuance of a subpoena under Section 512(h) to a conduit ISP is an issue of

first impression in our Circuit, and the Court agrees that Rightscorp's interpretation

of Section 512(h), "although not persuasive, is not frivolous, [was not illogical]

and . . . Rightscorp's issuance of the subpoena [was not] unreasonable."  See R&R

at 9-10; see also Mount Hope Church v. Bash Back!, 705 F.3d 418, 429-430

(9th Cir. 2012) ("Sanctions for issuing a subpoena are in no way supported merely

because a party advocated a position in seeking discovery that lost in the end.  The

scope of permissible sanctions under Rule 45(c)(1) should not be so broad as to

---

[11]     To the extent Rightscorp argues that Section 512(h) must apply to a Section
512(a) conduit ISP because a copyright holder "often has no other recourse than to
pursue the users who are illegally sharing copyrighted materials" and they "cannot
seek this recourse without the identity of the infringer," Rightscorp itself
acknowledges that, as an alternative to a Section 512(h) subpoena, "a rights holder
can bring a 'John Doe' action and seek a subpoena pursuant to Rule 45 of the
Federal Rules of Civil Procedure."  (Resp. [11] at 13 & n.2).
[12]     17 U.S.C. § 512(h)(6) provides that the Federal Rules of Civil Procedure
apply to a subpoena issued under the DCMA.

chill or deter the vigorous advocacy on which our civil justice system depends.");

Legal Voice v. Stormans Inc., 738 F.3d 1178, 1185 (9th Cir. 2013) (noting that

sanctions under Rule 45(d)(1) are discretionary and affirming decision not to

award sanctions absent evidence that subpoenas were overbroad or issued with bad

faith or improper motive); cf. Ozee v. Am. Counsel on Gift Annuities, 143 F.3d

937, 941 (5th Cir. 1998) (when a case is one of first impression, novelty of a legal

issue "cuts against" imposition of sanctions).  It also was not unreasonable for

Rightscorp to file its objections to seek the Court's review of this issue.  See

11th Cir. R. 3-1 (failure to object to R&R in accordance with 28 U.S.C.

§ 636(b)(1) waives right to challenge on appeal district court's order based on

unobjected-to portions of R&R).  CBeyond's First Motion for Sanctions, contained

in its Motion to Quash, and its Second Motion for Sanctions, contained in its

Response to Rightscorp's Objections to the R&R, are denied.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that that Magistrate Judge Janet F. King's

January 16, 2015, Order [18], which the Court construes as a Report and

Recommendation, is **ADOPTED.**  Rightscorp, Inc.'s Objections, docketed as an

Appeal [19], are **SUSTAINED IN PART** and **OVERRULED IN PART.**[13]

IT IS FURTHER ORDERED CBeyond's Motion to Quash [1] is

**GRANTED**.

IT IS FURTHER ORDERED that CBeyond's First Motion for Sanctions,

contained in its Motion to Quash [1], and CBeyond's Second Motion for Sanctions

[21], are **DENIED.**


SO ORDERED this 5th day of May, 2015.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[13]     Rightscorp's objection to the Magistrate Judge's statement regarding the number of CBeyond customers for whom the Subpoena seeks identifying information, and its objection to the Magistrate Judge's issuance of an order, rather than a report and recommendation, on the Motion to Quash, are sustained.